The Honorable, the Judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye, the United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Very well, good morning. Thank you, Council, for joining us in this forum. Madam Clerk, please call the first case for argument. First case for oral argument on Thursday, February the 13th, 2025, case number 24-1580 from the District of Nebraska, United States v. Junian Johnson. All right, Mr. Dornan, we'll hear from you first. Thank you, Chief Justice Colleton, Judge Strass, Judge Benton. May it please the Court. The issue here is whether a tip from a largely deficient indica of reliability to justify reasonable suspicion when the 911 caller's information was immediately discredited by multiple reliable sources. Those sources being two police officers in uniform 20 feet away by their reckoning from the intersection where a black Tahoe was supposedly firing off rounds. The other reliable source would be the spotter technology, which did not give any indication that shots were fired. And I would suggest that three propositions of law are particularly germane to this case. One, the general rule is that Fourth Amendment requires that anonymous tips must be corroborated. Well, Council, second time or, excuse me, second or third time you've said anonymous, is it anonymous when the caller identifies in great detail and gives a name and a telephone number? That's not anonymous. Judge, that's a very interesting question, and it appears in some of the oral arguments, I believe it was Judge Alito that brought up the same point. If you give a name and is there a number, is it truly anonymous or not? In this case, it's true we have a first name, Jasmine, and it's true we have a number. There's no indication that that number is connected to an address. There's no indication that a last name was ever provided, and so that's why I've used the terminology largely anonymous. This is not the same as if you, Your Honor, Judge Benton, called in, identified yourself as Judge Benton, and gave an address. Obviously, the 911 dispatch, 911 law enforcement, would be able to find you, and if it was a false call, they'd be able to hold you into account. There's no indication that this caller, one, was ever found, identified, or talked to, so I do believe it's accurate to say they're largely anonymous. Judge Thomas' points in Navarrete v. California were well taken, that the 911 system does provide some technological means by which they can be held accountable, but that clearly didn't happen in this case. It didn't happen in Navarrete v. California either, for that matter. They barely knew what gender that caller was, so it is a largely anonymous caller, and I think that's part of the totality of the circumstances is certainly that they did identify themselves. That would go on the ledger towards reliability. However, there is not a single case in Supreme Court jurisprudence, or any other case that I have found, that where a 911 caller's information was held to be reliable, where not a single detail, predictive detail, was corroborated. Can I ask you, on that point, does it make a difference that the caller was never asked to give a last name or their address? I don't think it does make a difference, Judge, because the standard here is what reasonable, prudent men, making common sense judgments and inferences, would believe, and so that's what the officers have. They have a fairly limited set of information from 911 dispatch. It's true that they don't have the benefit of hindsight. However, all the Supreme Court cases that look at this, and I'm going to focus on Navarrete v. California, some predictive detail is corroborated. Navarrete v. California was a very close case, a bitterly divided court. Judge Scalia had a scathing dissent, where he suggested that this really lessened Fourth Amendment protections, and the linchpin that Judge Thomas based his decision on in Navarrete v. California is that not just that the vehicle description was corroborated, because the vehicle description is just a permanent observation. It's no different than the young black male in a plaid jacket in J.L. Anyone could walk by someone's driveway, look at a car, read the license plate. A crime was identified, counsel. It wasn't just the vehicle. A crime was identified. True. A crime was alleged, and it was a contemporaneous eyewitness allegation. However, that cuts both ways in the totality of the circumstances analysis, and this is why it's very germane, I believe, this case, because this case is about swatting. Swatting is when people weaponize the 911 dispatch system, seeking an armed response where police show up and arrest someone or seize them based on a false allegation. But there's no evidence here of swatting, right? There's no evidence here of swatting, but the officers... Proceed with your argument. Your time is over, Stan. Thank you, Judge. The key corroborative detail, predictive detail in Navarrete was California, was that this caller called in on Highway 1 in California going south. If you've ever driven Highway 1 in California, it's a two-lane road, it's rural. That was noted by the judges in oral argument. And so when the caller calls in and says, I'm on mile marker 88, traveling south, and this specific car almost ran me off the road, and it's traveling in this direction, that's a predictive detail. And so about 20 minutes later, about 20 miles down the road, when the officers see that car, well, that caller accurately predicted the direction of travel. That's not what happened here. Here, the caller said that the shots were fired at this intersection, the same intersection where officers were 20 feet away, and they said they were traveling southbound on 24th Street towards downtown. The 911 dispatcher helped her with that because the 911 dispatcher had access to her GPS location, and that's borne out in the record. And so officers didn't find this vehicle traveling southbound on 24th Street. They found the vehicle pulling into the driveway where it was registered to on the same block of the intersection where gunfire allegedly occurred. The same block. That's not a predictive detail, Judge. I could make that prediction about anyone saying, oh, the car that they're registered to might be driving on the road, on the block, and pull into the driveway where, you know, might be driving on the block where that person lives. It's not predictive. And that was a key element in the U.S. v. Edwards case, which I cited. The suspects identified in that case were going away from the scene of the crime, just like in Navarrete. They were going away from the scene of the crime, and that is also the... Does it make a difference, counsel? Does it make a difference that we're talking about a much more serious crime that's being reported? I know there was no evidence of a crime versus speeding, which is in Navarrete. I think the argument would be that the more serious crime may call for the officers to take immediate action. It does not, Judge. Respectfully, J.L. v. Florida is a very strong assertion that there is no firearm exception to this rule, and the Supreme Court has played around with whether a situation might exist. For example, I think it was Scalia who suggested, well, what if the caller said that a driver had an atomic bomb and they were headed to California? Another example, what if a driver put a child into the trunk at gunpoint? They've never reached that issue. They've suggested that maybe a case would arise where some type of exception would exist, but they've absolutely repudiated gun exception. And with that, I'd like to reserve my time. Thank you. Very well. You may. Thank you for your argument. Mr. Learman, we'll hear from you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Matt Learman. I represent the appellee in this matter, the United States. I want to go directly to argument here and address a couple of the statements that counsel made. First, and this is what Judge Benton mentioned previously, that this was not an anonymous 911 caller. In fact, when this tip was called in, the 911 caller provided their name, spelled it out for the 911 dispatcher and confirmed that the phone number that they were calling from was, in fact, correct. In terms of the information that the 911 caller provided, it was contemporaneous with the events. It was precipient eyewitness information. It was detailed. The caller said that they were in the area of 24th and Bristol, not that it happened at that exact intersection, and that's an important distinction to be made. The caller, when you listen to the 911 call, said, I'm like right around the corner. So it's around that area of 24th and Bristol in which they note that someone is shooting off rounds of a black Tahoe, and they provided almost the entirety of the license plate, missing just one digit. It was YAK91 when the full license plate was YAK915. They mentioned this. The 911 dispatcher asked them for their first name, not their last name. That was provided and spelled out, confirmed the phone number, and then asked for a little bit of additional details. The caller stated that it appeared that the vehicle was traveling southbound on 24th Street, and when asked whether or not they needed an officer to come there, the 911 caller said something specific, and that was, no, it looks like there are officers down there, meaning that they could see other officers in the area. That was the Baker 44 car that was in the area. It was approximately a block away on Lathrop Street, but it was parked eastbound to the point where it wouldn't have been able to see what was occurring. So this is information that's far more detailed than any of the cases that were at a case. All we have is a description of a vehicle, a license plate number, and what was described as reckless driving. Reckless driving is opaque. It's sort of in the eye of the beholder. It can be weaving within a lane or maybe driving onto a shoulder. That's a heck of a lot different than saying that somebody is either shooting off rounds or giving information to officers that an individual is armed with a firearm and represents a threat to the public. Based upon that, officers determined that the full license plate was the YAK-915, and it was registered to the defendant in this case who lived just down the street, which is 2503, I believe, Bristol Street, roughly a block away. And you have to understand that this is all happening in a very short period of time. We have the 911 call that occurs at 1946. Within four minutes, officers arrive at the common driveway where Mr. Johnson lives, and they see that Tahoe backing in. Once they see that Tahoe backing in, they observe it to be a black Tahoe, just like the 911 caller said. They observe the license plate to be exactly what the 911 caller said, again providing additional corroboration that what the 911 caller provided was true and accurate. Mr. Dorn talks about the fact that, well, the shot spotter didn't go off, and that's accurate. It's also accurate that two of the officers that were on scene or near the scene where these shots were to have occurred, the Baker 44 car, didn't hear any sort of shots being fired. But that was explained by officers, one being that you have to consider the conditions. The Baker 44 car, they were eastbound, or they were facing eastbound. Had they testified any of the events that would have occurred behind them, they would not have been in a position to see. And it's also important to consider that there are a number of variables that occur with respect to a shot's fire. One, is this a high caliber firearm? Is it a small caliber firearm? Is it a pistol? Is it a rifle? Is this a firearm that's equipped with a sound muffler or a silencer? Any number of things offer alternative explanations about what the officer could or could not have heard at the time. This is wintertime. Officers are likely sitting in their cars with their windows up, radio traffic on or heaters on. So all of these alternative explanations don't do anything to vitiate or to otherwise obviate the need for officers to arrive on scene and investigate whether, in fact, a person is armed with a firearm and firing shots within the city, something that Judge Strauss mentioned, that being the difference between a reckless driver and somebody firing shots in the city center. And so officers were reasonable in approaching Mr. Johnson, observing his behavior, and the corroboration of the 911 caller continued. Unlike in the King case and unlike in the Edwards case that Mr. Dornan cites in his brief, we have continuing corroboration and we have continuing areas or issues where you see the defendant in this case acting in such a way as to raise additional safety concerns for the officers. Instead of just getting out of his vehicle as officers approach and engaging them in conversation, he goes to the driver's passenger side, opens that door, and begins concealing himself or, in the words of the officers, messing around on the floorboard, raising additional concerns for the officer's safety, knowing that there's a report that this individual is presently armed and dangerous. That raises their concern. That's different than the King and Edwards case that Mr. Dornan cited where the individual didn't flee, didn't turn away, didn't do anything to raise their concerns. And so you have that additional areas of emphasis for the officers. As this is occurring on the video, you hear the chirping of the alarm. You see the defendant immediately close the door and locking the keys within the vehicle. All of these things raising additional concerns for the officers to the point where they have to go in to check him, do a terry frisk of him, and check the vehicle. All of this is occurring in a very short period of time, Your Honor. We cite in the brief, and the district court actually cited this, and this is page 28 of my brief, that it's easy to look at these cases in retrospect and to say to the officers that they should have known that they could have seen these things, that by taking the shot spot or lack of notification that there wasn't actual shots heard by the officers, that this somehow is something that the officers should have looked back in retrospect and arrived at this conclusion in a rapid fire manner. But this is occurring within minutes. Counsel, let me interrupt you. At what exact moment do you think the terry stop occurred, the government's position? At the point that the officers first made contact and began physically searching Mr. Johnson at the door. And Judge, if I could, I'll reserve the rest of my time. Thank you very much. Well, you can't really reserve it, but you may release it, and we thank you for your argument. Mr. Dornan, we'll hear rebuttal. Thank you, Judge. Briefly, I do respectfully disagree with my colleague as far as the location of the caller. If you listen to that call and the back and forth with 911 dispatch, it's very clear. The 911 caller said, I just saw shots being fired. The 911 dispatch can see exactly where she is on the GPS and the 911 caller confirms it with dispatch. So I would disagree with that. And whether it's on the same block around the corner, you know, the point is, this is all within one city block. And the standard that the officers have... Counsel, when do you say the Terry stop occurred? I would generally agree with Mr. Learman. The officers pretty much immediately came up and seized my client. They immediately laid hands on him. Well, he's still messing around as they come up. That's the undisputed testimony. He's messing around with the back seat after they start to talk. Thank you, Judge. And that's an important point because furtive movements doesn't resurrect reasonable suspicion where it's dead on the vine. All the furtive movement cases that are cited are people loitering at 2 a.m. in a grocery store parking lot where there's been lots of break-ins or the police have stopped them. There's no sliding scale as far as the severity of the crime alleged. There's no gun exception. There is a sliding scale as far as where this person is seized. He is seized for all intents and purposes in his home. The curtilage, not getting into the legalese of that, but that's in his home. Judge, if we asked 100 reasonable, prudent men and we gave them this scenario, they would say, well, the officers are telling the truth and this caller is lying. It's not meant to be convoluted legalese. The officers clearly are the reliable people here. The shot spotter is reliable. The caller is not. Thank you. Very well. Thank you to both counsel. The case is submitted and the court will file a decision in due course. The court will be in recess until 9 o'clock. Thank you. Thank you. Thanks.